UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MAGNOLIA POLICE OFFICERS
ASSOCIATION, ET AL,
*Plaintiffs*

VERSUS

CITY OF BATON ROUGE, AT AL,
*Defendants*

CIVIL ACTION NO. 00-746-A-1

---

**PLAINTIFF FLOYD WILLIAMS' MOTION TO VACATE JUDGMENT
PURSUANT TO RULE 60(b)(4)**

---

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Floyd Williams, respectfully moving this Honorable Court, pursuant to Fed. R. Civ. P. 60(b)(4), to vacate its Judgment entered on September 11, 2006 (R. Doc. 134 & 135), on the grounds that the judgment is void because it was entered in violation of due process that deprived the Plaintiff of notice of trial and the opportunity to be heard.

In support of this Motion, Plaintiff respectfully submits the following: (1) the September 11, 2006 Judgment int this case was entered without constitutionally adequate notice to Plaintiff, as notices were mailed to Plaintiff at an address where he no longer resided and where said notice was even returned as "undeliverable" to the Court; (2) Plaintiff was deprived of a meaningful opportunity to be heard at trial before his claims were dismissed with prejudice, since he did not receive notice of the trial and was not present at trial; and (3) a judgment entered in violation of due process is void under Rule 60(b)(4) and must be vacated upon proper challenge. Plaintiff also respectfully represents:

1.

The Plaintiff, Floyd J. Williams (hereinafter "Mr. Williams"), was employed as a police officer for the Baton Rouge Police Department for eleven (11) years.

1

2.

On September 9, 1996, the Plaintiff's employment was terminated by the Baton Rouge Police Department.

3.

At the time of the Plaintiff's termination, there existed a systemic pattern of overt race discrimination at the Baton Rouge Police Department, In *Alcorn v. City of Baton Rouge*, 2002 0952 (La. App. 1 Cir. 12/30/2004, 898 So.2d 385, the State First Circuit Court of Appeal and the First Circuit rendered a judgment which determined and adjudicated that, during the same time period as involved in Williams' case, the work environment of the Baton Rouge City Police Department was a racially hostile work environment. The First Circuit held:

> "After a thorough review of the entire record, we find that a jury could reasonably determine the plaintiffs were subjected to race-based harassment, which created a hostile work environment, continually throughout their careers. Evidence was presented that shows that they were subjected to racial epithets, slurs, and jargon, levied at them directly or in their presence on virtually a daily basis throughout their employment, spanning well over twenty years. A jury could reasonably conclude that the racially hostile work environment unreasonably interfered with their work performance and affected their employment.
>
> Also, a reasonable jury could conclude that the plaintiffs were subjected to recurring acts of discrimination. Evidence was presented to show that both men were denied overtime, training opportunities, advancement in their careers, and the ability to effectively perform their jobs, and both men were ultimately forced to leave their chosen careers, which took place well after these lawsuits were filed.
>
> Here, the jury obviously concluded that actions of race-based discrimination and harassment continued throughout the plaintiffs' employment - they never ceased. The jury was reasonable in concluding that the evidence overwhelmingly established the type of continual and cumulative acts necessary to constitute an actionable continuing violation claim." *Id.* at 389-90

4.

Following his termination and in an effort to challenge the discriminatory actions taken against him, Mr. Williams began pursuing legal remedies. Mr. Williams brought attorney Bernard Hardy to a meeting with the Magnolia State Peace Officers Association of Louisiana ("Association") (which is incorrectly referred to as the Magnolia Police Officers Association in the complaint in this matter) to seek the Association's financial support of his state court litigation, but the Association informed Mr. Williams that it was not financially able to provide the financial support. Despite this, Mr. Williams informed the group that he would be pursuing a state court action through Mr. Hardy.

5.

On September 9, 1997, Mr. Hardy, on behalf of the Plaintiff, filed suit in the 19th Judicial District Court wherein he alleged that the termination of his employment was motivated by race discrimination. This suit was styled *Floyd J. Williams v. City of Baton Rouge, et al.*, Docket No. 442,500, 19th Judicial District Court, Parish of East Baton Rouge.

6.

After he filed the state court action, Mr. Hardy withdrew as Mr. Williams' counsel of record because the Association was unable to provide financial support for the litigation.

7.

Following Mr. Hardy's withdrawal, Mr. Williams enrolled Terry Bonnie as his counsel of record in the state court proceeding. However, Mr. Bonnie filed a Motion to Withdraw on September 4, 2001, which the district court withheld ruling until the date set for trial.

8.

On September 20, 2001, the day of the trial, Mr. Williams filed a motion for continuance on the grounds that he was without proper representation. The District Court denied this motion and Mr. Williams attempted to represent himself at trial. The Defendant thereafter moved to dismiss Mr. Williams' state court action, and the district court granted this motion to dismiss.

9.

Thereafter, Mr. Williams engaged attorney Patrick F. McGrew to represent him in the state court litigation.

10.

Mr. McGrew filed a devolutive appeal on Mr. Williams' behalf. On November 10, 2003, the district court dismissed Mr. Williams' devolutive appeal for non-payment of the appeals costs.

11.

On March 24, 2005, the First Circuit Court of Appeal reinstated Mr. Williams' appeal upon determining that Mr. Williams' third lawyer, Mr. McGrew, had sent a check to the district court Clerk's Office which was "NSF" for the payment of the appeals costs and that the non-payment of the appeals costs was due to no fault on the part of Mr. Williams. The First Circuit Court of Appeal vacated the judgement, reinstated Mr. Williams' appeal, and he paid the appeals costs and his appeal was reinstated.

12.

On September 1, 2006, the First Circuit Court of Appeal rendered its decision on the merits of Mr. Williams' appeal in 2005 CA1796. The Court of Appeal reversed and remanded the case to the trial court for a new trial.[1]

13.

In the midst of the Plaintiff's state court proceeding, the Association, through its President, Darold Cornelius, hired Mr. McGrew to file a federal lawsuit alleging race discrimination by the Baton Rouge Police Department. Mr. McGrew filed the federal complaint on October 5, 2000, three (3) years after Mr. Williams had filed his individual action in the 19th Judicial District Court.

14.

The Association had originally intended its lawsuit to be a class action matter. In connection with pursuing the class action suit, Mr. Cornelius provided Mr. McGrew with a list of names of people to include in the federal suit. The list included (without his knowledge) the name Floyd J. Williams. However, Mr. Williams never engaged the services of Mr. McGrew to represent him in the federal action since he had already filed a state court action in 1997, in his own, i.e., individual capacity. In fact, Mr. Williams never even saw a copy of the federal complaint until October 15, 2025.

15.

Nevertheless, Mr. Williams was initially included in the federal suit without his consent, or (initially) without his knowledge, despite his expressed intent to pursue an individual suit in state court seeking redress for racial discrimination.

---

[1] Several years later, Mr. Williams' state court action was again dismissed by the 19th Judicial District Court. However, this judgment was also reversed and the case remanded for trial. See *Williams v. City of Baton Rouge,* 2017 La. App. Unpub. LEXIS 112 (La. App. 1 Cir. 04/12/17).

16.

On or about October 10, 2003, the Louisiana Supreme Court disciplined Mr. McGrew (because? if for matters unrelated = "for matters unrelated to both the federal and state proceedings"), resulting in his suspension from the practice of law in the State of Louisiana. (See *In re McGrew*, 862 So. 2d 966 (La. 2003)).

17.

Consequently, on December 14, 2006, following an investigation by the Office of Disciplinary Counsel of Mr. McGrew's conversion of client and third-party funds, he was permanently disbarred from the practice of law in the State of Louisiana. (See *In re McGrew*, 920 So. 3d 865 (La. 2006)).

18.

After Mr. McGrew became unable to represent the Association, Mr. Cornelius hired Ms. Jill Craft to represent the Association in this litigation. As Mr. Cornelius makes clear in his declaration in this matter, it was the Association, and not Floyd Williams, who hired Ms. Jill Craft. Moreover, it is undisputed that Mr. Williams never entered into any contract with attorney Jill Craft for legal representation, and thus no attorney-client relationship *ever* existed between them.

19.

In 2004, Mr. Williams finally became aware that his name was listed as a Plaintiff in the federal litigation. Upon this discovery, Mr. Williams went to Ms. Craft's office and met with her. He advised her that he did not wish to participate in federal litigation, as he was actively pursuing his desired relief via the state court litigation, and did not desire or require her services.

20.

By motion filed in the federal court on June 15, 2004, Ms. Craft informed the Court that "Undersigned counsel, after personally conferring with Floyd J. Williams and Reginald Broux, desires to withdraw as counsel of record for these individuals. Specifically, undersigned counsel and these individuals have irreconcilable conflicts, and these individuals do not desire to retain the services of undersigned counsel. On June 17, 2004, Ms. Craft formally withdrew as counsel of record for Mr. Williams.

21.

However, Ms. Craft did not file a Motion to Dismiss Mr. Williams' purported claims in the federal action without prejudice and did not advise Mr. Williams that it would be necessary and appropriate to do so if he did not wish to participate in the federal litigation.

22.

According to the records of the federal proceedings, the federal court sent notices of procedural matters regarding class actions to Mr. Williams, a lay person, in proper person. However, Mr. Williams never received any of those notices from the federal court.

23.

On June 15, 2004, Ms. Craft provided the federal court with Mr. Williams' residential address at 5386 Kincaid Ave, Baton Rouge, Louisiana, where he resided at that time.

24.

However, Mr. Williams moved from the Kincaid Avenue address in September 2005 and thereafter never received any mail which had been sent to him at the Kincaid Avenue address.

25.

In fact, the federal court record shows that on January 20, 2005, an order which had been enacted on that same date was mailed to Mr. Williams but was returned marked "undeliverable." The fact that this notice was returned as "undeliverable" establishes that the previous notices to Mr. Williams at the Kincaid Avenue address were likely "undeliverable" as well and ineffective to provide him with any notice, actual or otherwise, of the events, hearings, and trial in the federal action. Nonetheless, the federal court record shows that the presiding Magistrate Judge made no further effort to provide Mr. Williams with actual notice of such events, hearings, or the trial in the federal court case.

26.

The federal court record also shows that the presiding Magistrate Judge had a status conference in that case for September 6, 2006, but Mr. Williams did not appear at that conference. Mr. Williams respectfully submits that he did not appear at that conference because he did not receive notice of that conference; in other words, since the notice had been sent to the Kincaid Avenue address, he was unaware of it. At that point, Mr. Williams had not lived at the Kincaid Avenue address for more than one (1) year.

27.

It was at this September 6, 2006, status conference that the federal case was set for trial on September 11, 2006. Mr. Williams never received notice of the trial date, and the federal court record shows that the only address that the court had for Mr. Williams was the Kincade Avenue address.

28.

The court record of this case also shows that, aside from the Court's personnel, the only person who was present on the day of the trial was an Assistant Parish Attorney, from the East Baton Rouge Parish Attorney's Office.

29.

Despite the fact that Floyd Williams had been actively pursuing his state court action since 1997, and that the state court action had been actively defended by the Parish Attorney's Office, the federal court record contains no indication that the Parish Attorney's Office informed the Presiding Magistrate Judge of the pendency of Mr. Williams' state court action or that the dismissal with prejudice of the federal action, to which Mr. Williams was purportedly a party, would have a materially adverse effect on the state court action and Mr. Williams' right to his day in court on his race discrimination claims.

30.

On September 11, 2006, this Court, the Honorable Stephen C. Riedlinger, ordered the dismissal of this action with prejudice for failure to prosecute, without notice to Mr. Williams. The record of this Court shows that this case came on for trial on September 11, 2006. The Court's minutes state:

> Counsel for defendants moved to dismiss with prejudice the claims of plaintiffs John L. Jackson and Floyd J. Williams for failure to prosecute and failure to appear for trial. The court granted defendant's motion to dismiss plaintiffs John L. Jackson and Floyd J. Williams with prejudice and will issue a written ruling. (See R. Doc. 134 and 135)

31.

Nevertheless, the Parish Attorney's Office withheld the existence of this federal court judgment from Mr. Williams and his attorneys until October 15. 2025. Shortly thereafter, the

9

Parish Attorney's Office filed an Exception of Res Judicata based on the federal court judgment. On February 9, 2026, the 19th Judicial District Court, the Honorable Richard "Chip" Moore, presiding Judge, granted the exception of Res Judicata and dismissed Mr. Williams' state court suit with prejudice on the basis of res judicata with the observation that the result in the state court suit was "terrible, terrible."

32.

Under Rule 3.3 of the Rules of Professional Conduct, in an ex parte proceeding, "The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosure of material facts known to the lawyer and that the lawyer reasonably believes are necessary for an informed decision." Ciolino, Louisiana Legal Ethics (2020).

33.

The Parish Attorney's Office has known since 1997 that Mr. Williams was actively pursuing relief via state court litigation and has known since 2003 that he has been represented by undersigned counsel since 2003.

34.

The Parish Attorney's Office had actual or constructive knowledge because on March 24, 2005, and September 1, 2006, the First Circuit Court of Appeal ruled in Mr. Williams' favor and against the City-Parish in appeals of the dismissal of his state court action. The Parish Attorneys' Office defended both appeals.

**WHEREFORE**, Plaintiff respectfully requests that this Court vacate the Judgment entered on September 11, 2006, and grant such other relief as justice requires.

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has this day been electronically filed with the Clerk of Court for the U.S. District Court, Middle District of Louisiana and that a copy of same has been served upon all counsel by automatic operation of the Clerk's ECF/ECM electronic filing system.

Baton Rouge, Louisiana this 13th day of March 2026.

*/s/ J. Arthur Smith, III*
J. Arthur Smith, III

Respectfully submitted;

**SMITH LAW FIRM**

*/s/ J. Arthur Smith, III*
J. Arthur Smith, III (# 07730)
830 North Street
Baton Rouge, LA 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
Email: jasmith@jarthursmith.com
*Counsel for Plaintiff, Floyd Williams*

*-And-*

Michael J. Jefferson
ATTORNEY AT LAW
La. Bar Roll No. 22430
P.O. Box 1906
Baton Rouge, LA 70821-1906
Email: mjefferson@mjjefferson.com
*Counsel for Plaintiff, Floyd Williams*

11