**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MAGNOLIA POLICE OFFICERS**<br>**ASSOCIATION, FLOYD J. WILLIAMS,**<br>**REGINALD BROUX, and RALPH ALBERT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 00-746-RLB** |
| **CITY OF BATON ROUGE/BATON ROUGE**<br>**POLICE DEPARTMENT** | |

**<u>ORDER</u>**

Before the Court[1] is Plaintiff Floyd Williams' Motion to Vacate Judgment Pursuant to Rule 60(b)(4) ("Motion to Vacate"). (R. Doc. 138). The Motion to Vacate is opposed. (R. Doc. 143). Plaintiff filed a reply. (R. Doc. 145).

Also before the Court is Plaintiff's Motion for Evidentiary Hearing. (R. Doc. 139). The Motion for Evidentiary Hearing is opposed. (R. Doc. 144).

## I.     Background

On September 19, 1997, Floyd Williams ("Movant") filed suit in the 19th Judicial District Court, East Baton Rouge Parish, alleging he was terminated by the Baton Rouge Police Department due to racial discrimination. (R. Doc. 138 at 3). Bernard Hardy, as Movant's counsel, initially filed the state court petition but later withdrew as Movant's counsel. (R. Doc. 138 at 3). Movant then enrolled Terry Bonnie as his counsel in the state court proceeding, but Mr. Bonnie also withdrew as Movant's counsel. (R. Doc. 138 at 3). Movant then hired Patrick McGrew as his counsel in the state court proceeding, and Mr. McGrew represented Movant until October 2003 when Mr. McGrew was suspended from practicing law in Louisiana. (R. Doc. 138

---

[1] The parties waived their right to proceed before a United States District Judge and consented to having a United States Magistrate Judge conduct any all further proceedings in this case, pursuant to 28 U.S.C. §636(c). (R. Docs. 37, 39).

1

at 6). Movant subsequently enrolled the Smith Law Firm as his counsel in the state court proceeding, who continues to represent Movant to date. (R. Doc. 138 at 10).

On October 5, 2000, Movant, Reginald Broux, Ralph L. Albert, and the Magnolia Police Officers Association ("Magnolia") instituted the instant action against the City of Baton Rouge and its administrative subdivision, the Baton Rouge Police Department (collectively, "Defendants"), by filing the Complaint, asserting a class action with Movant, Broux, and Albert as the class representatives. (R. Doc. 1 at 2). In the Complaint, Movant alleged experiencing discriminatory acts by the Defendants, leading to Movant's termination from the Baton Rouge Police Department. (R. Doc. 1 at 4-5). Movant sought individual recovery, asserting the same claims asserted in his state court proceeding, as well as recovery common to the purported class. (R. Doc. 1 at 10-11). The Complaint was filed by Mr. McGrew on behalf of Movant, Broux, Albert, and Magnolia ("Petitioners"). (R. Doc. 1 at 12).

Movant alleges that Magnolia alone hired Mr. McGrew for representation in the federal suit. (R. Doc. 138 at 5). According to the Motion to Vacate, Magnolia and Mr. McGrew added Movant as a plaintiff in the federal court proceeding without his consent or knowledge. (R. Doc. 138 at 5).

Defendants filed their answer on December 22, 2000. (R. Doc. 3). Petitioners then filed a status report on January 5, 2001. (R. Doc. 4). Discovery commenced, and Defendants filed a Notice of Deposition for Movant, Broux, and Albert on February 20, 2001. (R. Doc. 6; R. Doc. 7; R. Doc. 8). The deposition of Movant was set for February 23, 2001. (R. Doc. 6). On March 20, 2001, a status conference was held, and counsel for Petitioners confirmed that Defendants took depositions of Movant, Broux, and Albert. (R. Doc. 10 at 1).

Petitioners filed their First Amending and Restated Complaint on May 7, 2001, reasserting the claims of the purported class and Movant's individual claims. (R. Doc. 13). Petitioners filed its Second Amending Complaint on August 2, 2001, again reasserting claims of the purported class and Movant's individual claims. (R. Doc. 24). Litigation continued throughout 2001, 2002, and 2003 with Mr. McGrew filing multiple motions on behalf of Movant and the other Petitioners (R. Doc. 25; R. Doc. 34; R. Doc. 51). At a hearing on July 28, 2003, Mr. McGrew withdrew as counsel of record for Petitioners due to conflict issues. (R. Doc. 58).

Petitioners filed a Motion to Enroll as Counsel of Record on January 14, 2004, seeking to enroll Jill L. Craft. (R. Doc. 59). Movant alleges he was not aware of his involvement in the federal court proceeding until 2004. (R. Doc. 138 at 6). Upon this discovery, Movant contends he met with Ms. Craft and advised her that he did not want to participate in the federal court proceeding and did not require her legal services. (R. Doc. 138 at 6).

On June 15, 2004, Ms. Craft filed a motion to withdraw as counsel of record for Movant, Broux, and Albert. (R. Doc. 67). Ms. Craft stated Movant and herself had "irreconcilable conflicts" as he did not "desire to retain [her] services." (R. Doc. 67 at 2). Again, Movant alleges that Magnolia alone retained Ms. Craft as counsel and that no attorney-client relationship ever existed between Movant and Ms. Craft. (R. Doc. 138 at 6).

A motion to dismiss was not filed on behalf of Movant, so Movant continued in the federal court proceeding unrepresented. (R. Doc. 138 at 7). In her motion to withdraw, Ms. Craft provided Movant's address, 5386 Kincaid Avenue, Baton Rouge, Louisiana 70805 (the "Kincaid Address"), as required by Local Rule 13 of the Middle District of Louisiana. *See* M.D. La. LR 13 ("If new counsel is not substituted and no counsel of record will remain to represent the client, the motion to withdraw shall contain: 1) the present address of the client and the client's

telephone number if the client can be reached by telephone and 2) a certification by counsel that the client has been notified of all deadlines and pending court appearances.") (R. Doc. 67 at 2). From this point forward, the Court sent all notices for Movant to the Kincaid Address. (R. Doc. 135 at 4). Movant confirms he resided at the Kincaid Address at the time Ms. Craft provided the address to the Court. (R. Doc. 138 at 7). However, Movant contends he moved from the Kincaid Address in September 2005 and therefore never received any notices from the Court. (R. Doc. 138 at 7). Movant did not update his address with the Court after moving.

On January 19, 2005, prior to Movant leaving the Kincaid Address, an Amended Scheduling Order previously mailed to Movant at the Kincaid Address on January 10, 2005 was returned as undeliverable, stating that mailing was attempted and the reasoning for it being undeliverable is unknown. (R. Doc. 82). This was the only notice from the Court sent to Movant at the Kincaid Address returned as undeliverable. On August 31, 2005, the Court mailed notice to Movant at the Kincaid Address of the initial trial date in its Supplemental Pretrial Order and Ruling on Motion to Supplement Pretrial Order. (R. Doc. 95). On April 7, 2006, the Court mailed notice to Movant at the Kincaid Address of the trial date being reset. (R. Doc. 127). Prior to the trial, on September 6, 2006, the Court held a status conference, and the Court provided notice of the conference to Movant at the Kincaid Address on September 1, 2006. (R. Doc. 132). The trial was held on September 11, 2006. (R. Doc. 133). Movant was not present at trial, and Defendants moved to dismiss Movant's claims with prejudice for failure to prosecute and failure to appear for trial. (R. Doc. 133). The Court granted the motion and dismissed Movant's claims with prejudice. (R. Doc. 133).

The Court issued written reasons for its dismissal, stating that the last action taken in the case by Movant was on January 14, 2003 when he moved to enroll new counsel, Ms. Craft. (R.

Doc. 135 at 4). When Ms. Craft withdrew, Movant became unrepresented and has been unrepresented ever since. (R. Doc. 135 at 4). Despite being sent notice of the order allowing withdrawal of his counsel of record and all subsequent orders, Movant failed to respond or participate in the action. (R. Doc. 135 at 4). The Court stated, "Although, no previous/lesser sanctions have been imposed, the long period of intentional delay by the plaintiffs establishes that sanctions less than dismissal would be futile and would not result in the plaintiffs promptly prosecuting their claims." (R. Doc. 135 at 5). Additionally, the Court reasoned that a lesser sanction would cause actual prejudice to the defendant who has complied with the court's orders and deadlines and is ready to go to trial in this almost six-year-old lawsuit. (R. Doc. 135 at 6).

Defendants allege that its counsel discovered the September 11, 2006 Judgment in July 2025 during a supplemental deposition of Movant in the state court proceeding. (R. Doc. 143 at 6). Defendants then filed an exception of *res judicata* in the state court proceeding based on the September 11, 2006 Judgment. On February 9, 2026, the exception of *res judicata* was granted, and Movant's state court proceeding was dismissed with prejudice. (R. Doc. 138 at 10).

Movant now seeks to vacate the Court's September 11, 2006 Judgment dismissing Movant with prejudice on the grounds that the judgment is void pursuant to Fed. R. Civ. P. 60(b)(4) because it was entered in violation of due process. (R. Doc. 138).

## II.     The Motion for Evidentiary Hearing is Denied.

Plaintiff moves for an evidentiary hearing, arguing that adjudication of the Motion to Vacate will require an evidentiary hearing. (R. Doc. 139). Plaintiff's Motion for Evidentiary Hearing does not state what evidence will be presented nor the purpose of this evidence. (R. Doc. 139). The Court finds that without further information, Plaintiff's Motion for Evidentiary Hearing should be denied. Further, the Court finds no need for an evidentiary hearing to decide the Motion to Vacate as the Motion to Vacate may be decided on the pleadings.

5

### III.   Law and Analysis

#### A.   Legal Standards

Rule 60(b) provides that relief from a judgment or order may be had for (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, (3) fraud, misrepresentation or misconduct by an opposing party, (4) a void judgment, (5) a judgment that has already been satisfied, is no longer equitable, or has effectively been overturned, or (6) any other reason that justifies such relief. Fed. R. Civ. P. 60(b). Rule 60(b) is recognized as affording "extraordinary relief," which implicitly includes "the requirement that the movant make a sufficient showing of unusual or unique circumstances justifying such relief." *Pryor v. U.S. Postal Service*, 769 F.2d 281, 286 (5th Cir. 1985). Movant only seeks relief pursuant to Rule 60(b)(4). (R. Doc. 138).

"A void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "A judgment 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Williams v. New Orleans Public Serv., Inc.*, 728 F.2d 730, 735 (5th Cir. 1984) (quoting 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2862 (1973)); *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) ("Under Rule 60(b)(4), this court will generally look toward two factors to determine voidness," *i.e.*, whether the court (1) "lacked jurisdiction of the subject matter, or of the parties" or (2) "acted in a manner inconsistent with due process of law.") (quoting *New York Life Ins. Co. v. Brown*, 84 F. 3d 137, 143 (5th Cir. 1996)); *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) ("The 'exceedingly short' list of such 'infirmities' includes only subject matter jurisdiction, personal jurisdiction, 'or [ ] a

6

violation of due process that deprives a party of notice or the opportunity to be heard.'") (quoting *Espinosa*, 559 U.S. at 270).[2]

When a court has both subject matter and personal jurisdiction, the sole inquiry is whether the district court acted in a manner so inconsistent with due process as to render the judgment void. *See Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003). "Such circumstances are rare because due process in civil cases usually requires only proper notice and service of process and a court of competent jurisdiction." *Id*. "[P]rocedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." *Id*.

### B.   The actions of the attorneys in the instant action do not determine whether the Court acted in accordance with due process of law.

A judgment is rendered void based solely the actions of the Court, not the attorneys involved. *See Carter*, 136 F.3d at 1005 ("A judgment is void for purposes of Rule 60(b)(4) if the court that rendered it entered an order outside its legal powers"); *see also Callon*, 351 F.3d at 210 ("As noted earlier, Rule 60(b)(4) relief is warranted if a district court's actions are inconsistent with due process of law.") (citing *Carter,* 136 F.3d at 1006; *New York Life Ins. Co.,* 84 F.3d at 143).

Movant states he was "initially included in the federal suit without his consent, or (initially) without his knowledge, despite his expressed intent to pursue an individual suit in state court seeking redress for racial discrimination." (R. Doc. 138 at 5). However, "a court does not act inconsistently with due process when it acts under the assumption that a party's attorney has authority to file what he or she files with the court." *Farmamedica, S.A. v. Ana Eloisa Alfaro De*

---

[2] Neither party alleges that the Court did not have jurisdiction to render a judgment, so the Court will solely consider whether it acted in a manner inconsistent with due process of law.

*Maron*, No. 07-20944-CIV, 2011 WL 13173519, at \*3 (S.D. Fla. July 14, 2011), *aff'd* 461 F. App'x 918 (11th Cir. 2012) (citing *Larson v. Heritage Square Assocs.,* 952 F.2d 1533, 1537 (8th Cir. 1992)). If Mr. McGrew included Movant as a plaintiff in the lawsuit without his knowledge or consent, this is undoubtedly problematic, but it is not relevant to whether the Court acted in accordance with due process of law. To the Court's knowledge, Movant was represented by Mr. McGrew, and upon Mr. McGrew's withdrawal, by Ms. Craft. Afterwards, Movant proceeded in the lawsuit as a pro se litigant. While represented, the Court properly provided notice through Movant's attorneys. *See* Fed. R. Civ. P. 5(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."). As a pro se litigant, the Court properly provided notice by mailing it to Movant's last known address. *See* Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by: … mailing it to the person's last known address"). The Court therefore acted appropriately and had no reason to believe Movant was not willingly involved in the lawsuit. Any allegations Movant has regarding his attorneys acting on his behalf without proper authorization is a matter addressed in a bar complaint or legal malpractice lawsuit.

Further, after meeting with Ms. Craft in 2004, four years after the Complaint was filed, Movant argues that Ms. Craft "did not advise [Movant] that it would be necessary and appropriate to [file a Motion to Dismiss] if he did not wish to participate in the federal litigation." (R. Doc. 138 at 7). In sum, he was aware he was a party to the lawsuit and specifically informed Ms. Craft that she was not authorized to be his attorney. While the Court acknowledges that Movant, as a non-attorney, potentially did not know the proper procedural mechanism to be dismissed as a party to the lawsuit, a party's ignorance of law is not a defense. Ignorance of the law does not shield a pro se litigant, as a pro se litigant assumes responsibility

for their lack of knowledge of the law through their appearance. *Lawrence v. SID Geautreaux*, No. 19-206-BAJ-RLB, 2022 WL 22740833, at *1 (M.D. La. Oct. 31, 2022) (citing *Modicue v. Prince of Peace Auto sale, LLC*., 54,095, p. 9 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, 1246). Any argument Movant has regarding Ms. Craft failing to inform Movant of the proper procedure to be dismissed as a party to the lawsuit, despite being told that she was not authorized to represent him, is not relevant to whether the Court acted consistently with due process.

Movant also asserts that since he actively pursued a state court action defended by the Parish Attorney's Office since 1997 (R. Doc. 138 at 9), Rule 3.3 of the Rules of Professional Conduct required the Parish Attorney's Office to notify this Court of Movant's state court action. (R. Doc. 138 at 9). Movant argues that a dismissal with prejudice in this Court "would have a materially adverse effect on the state court action and [Movant's] right to his day in court on his racial discrimination claims," triggering Rule 3.3. (R. Doc. 138 at 9). *See* La. Rules of Prof. Conduct. 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."). However, the actions of the Parish Attorney's Office do not affect whether the Court acted in accordance with due process of law. Again, the Court had no basis to believe Movant was unaware of the continuing federal court proceeding or that the Parish Attorney's Office was in contact with Movant. Based on the information available to the Court, it did not act inconsistently with due process of law. A violation of the Louisiana Rules of Professional Conduct is handled through a bar complaint or a legal malpractice lawsuit.[3]

---

[3] Movant also argues that the Parish Attorney's Office knowingly withheld knowledge of this Court's September 11, 2006 Judgment from Movant until October 15, 2025. (R. Doc. 138 at 9). Again, any actions of the Parish Attorney's Office that Movant believes to be attorney misconduct should be handled in a bar complaint or a legal malpractice lawsuit and have no bearing on whether the Court acted consistently with due process of law.

9

To the Court's knowledge, Movant initiated the lawsuit, was represented by Mr. McGrew and later Ms. Craft, received notice through his attorneys, proceeded as a pro se litigant upon Ms. Craft's withdrawal, received notice through mail of all judgments rendered by the Court, and nonetheless failed to prosecute his case.

**C.      Notice of the proceedings to Movant at the Kincaid Address was not so inconsistent with due process of law as to render the September 11, 2006 Judgment void.**

The record supports a finding that the Court properly provided service to Movant with all filings by the Court. From the start of the lawsuit until June 15, 2004, Movant was represented by counsel, and notice was provided to Movant's counsel in accordance with Rule 5(b)(1). Fed. R. Civ. P. (5)(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."). As previously stated, the Court assumed Mr. McGrew and Ms. Craft had authority to act on behalf of Movant, and the Court relying on this assumption is not acting inconsistently with due process. *See Larson*, 952 F.2d at 1537.

After June 15, 2004, Movant was unrepresented, and the Court mailed service of all filings to Movant's "last known address" in accordance with Rule 5(b)(2)(C). Fed. R. Civ. P 5(b)(2)(C) ("A paper is served under this rule by: … mailing it to the person's last known address"). Ms. Craft provided the Kincaid Address as Movant's current address when she withdrew as his counsel of record. (R. Doc. 67 at 2). Additionally, Movant has confirmed he resided at the Kincaid Address when Ms. Craft withdrew as Movant's attorney. (R. Doc. 138 at 7). No further information regarding Movant's address was provided to the Court, so the Kincaid Address is Movant's "last known address" in accordance with Rule 5(b)(2)(C).[4]

---

[4] Defendants raise the argument that Movant, as a pro se litigant, had a duty to inform the Court of any change in address. This Court agrees with Defendant and discusses this argument below.

Although Movant lived at the Kincaid Address for 15 months after Ms. Craft's withdrawal, Movant claims he never received any notices sent by the Court to the Kincaid Address. (R. Doc. 138-1). Movant states he resided at the Kincaid Address until September 2005, which is the reason Movant did not receive notice. (R. Doc. 138-1 at 2). However, this does not provide a reasonable explanation for Movant allegedly not receiving notice during the time he was still living at the Kincaid address.[5] Absent an allegation that Movant failed to receive **any mail** at the Kincaid Address, Movant would need to argue that mail sent by the Court, Defendants' counsel, and Magnolia's counsel were specifically removed from his mail. This argument is illogical. Without further information, the Court has no basis to believe service was not received by Movant.[6] Additionally, even if Movant did not receive notice at the Kincaid Address, service is complete upon **mailing** when service is completed by mailing it to a person's last known address. Fed. R. Civ. P 5(b)(2)(C).

As further detailed below, Plaintiff failed to provide a reasonable basis for its failure to receive notice. Thus, the Court did not act inconsistently with due process of law.

i.    **Movant had actual notice of the federal court proceeding.**

Courts have found that when a party has knowledge of a lawsuit, this is sufficient to satisfy notice under due process of law for Rule 60(b)(4). *See Sec. & Exch. Comm'n v. Romeril,* 15 F.4th 166, 174 (2d Cir. 2021) ("As a general matter, there is no 'denial of due process for

---

[5] Movant argues that because a notice mailed to him in January 2005 was returned as "undeliverable," the Court should have known previous notices mailed to the Kincaid Address "were likely undeliverable as well" and therefore ineffective to provide notice. (R. Doc. 138 at 8). However, Movant admits he was living at the Kincaid address from June 2004 (when he became unrepresented) to September 2005. During this time, many notices were mailed to Movant at the Kincaid Address and not returned as undeliverable. Movant's argument is nonsensical and further discussed below.

[6] *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142 (5th Cir. 1996) (holding that service was not valid when the clerk mailed service to an address it knew from its own records to be invalid after being told by the current occupant that the party no longer resided at that address). In the instant case, the Court and clerk had no reason to believe the Kincaid Address was not the correct address.

purposes of Rule 60(b)(4) if the party seeking relief received actual notice of the **proceedings** and had a full and fair opportunity to litigate the merits.'") (emphasis added) (citing 12 Moore's Federal Practice Civil § 60.44[4]); *Sec. & Exch. Comm'n v. Novinger*, 40 F.4th 297, 303 (5th Cir. 2022) ("Because the defendants "received actual notice of the filing and contents of" the judgments, their due process rights were 'more than satisfied.'); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) (stating that due process implicates the right to notice "reasonably calculated, under all the circumstances, to apprise interested parties of the **pendency of the action** and afford them an opportunity to present their objections.") (emphasis added); *Vecron Exim Ltd. v. XPO Logistics, Inc.,* No. CV H-18-2394, 2022 WL 2392411, at *14 (S.D. Tex. July 1, 2022), *aff'd sub nom. Vecron Exim, Ltd. v. Baltagi*, No. 22-20385, 2023 WL 5346063 (5th Cir. Aug. 18, 2023) (holding defendant who had actual notice of the pendency of plaintiff's claims against him and multiple opportunities to defend himself was not deprived of due process by not being served with the initial summons and complaint).

Movant undoubtedly had actual notice of the pending federal court litigation. First, the Court assuming a party's attorney is acting on behalf of their client is not a violation of due process of law. *See In re Armored Car Antitrust Litig.*, 645 F.2d 488, 492-493 (5th Cir. 1981) ("an attorney is presumed authorized to represent the party he claims to represent"); *Farmamedica*, 2011 WL 13173519, at *3 ("a court does not act inconsistently with due process when it acts under the assumption that a party's attorney has authority to file what he or she files with the court"). Every time Mr. McGrew or Ms. Craft acted on behalf of Movant, Movant, to the Court's knowledge, was actively involved in the lawsuit. Without further information, there is no reasonable basis the Court would believe otherwise. The Court did not act inconsistently

with due process by assuming Mr. McGrew and Ms. Craft, in acting on behalf of Movant, were communicating with and consulting Movant regarding the lawsuit.

Second, Movant individually, not through his attorneys, had actual notice of the lawsuit. Movant was deposed at the start of the lawsuit and provides no explanation for his ignorance to his involvement in the lawsuit in light of the deposition; in fact, Movant does not address the deposition at all. (*See* R. Doc. 10 at 1). Movant also admits he spoke with Ms. Craft regarding the lawsuit. (R. Doc. 138 at 6). Notably, Movant states "no attorney-client relationship *ever* existed between" Movant and Ms. Craft and he informed Ms. Craft that he did not want her services (R. Doc. 138 at 6). Movant had no reasonable basis to assume that Ms. Craft was required to give him any legal advice, let alone file a motion to dismiss him as a party on Movant's behalf. In it undisputed that the Court was never informed of Movant's desire to be dismissed from the lawsuit, and the Court cannot be held accountable for Movant failing to properly dismiss himself.

When a party has actual notice of a lawsuit, even when the party proceeds as a pro se litigant, the party has a responsibility to stay updated on the status of the litigation. *See Pryor*, 769 F.2d at 287 (recognizing that a litigant has a duty to diligently inquire about the status of a case). At the absolute latest, Movant was aware of his status as a plaintiff in the instant lawsuit in 2004, yet he subsequently failed to inquire about the status of his case for over 20 years. Movant asserts Defendants "withheld the existence of this federal court judgment from [Movant] and his attorneys until October 15, 2025." (R. Doc. 138 at 9). However, Movant was previously aware of his involvement in the lawsuit and therefore bore the responsibility of inquiring into the lawsuit. *See Zachary v. Warden, Louisiana Corr. Inst. for Women*, No. CIV.A. 12-603-JJB, 2014 WL 3487830, at *3 (M.D. La. July 10, 2014) (holding that petitioner's failure to take any action to

13

inquire about the status of her case for eight months and her subsequent change of address does not lend support to her claim of due diligence); *see also Love v. Cain,* No. CIV.A. 13-225-SDD, 2013 WL 6530799, at *6 (M.D. La. Dec. 12, 2013) ("This delay of four months is additional compelling evidence that the petitioner has failed to show that he has acted with 'diligence and alacrity' in pursuing his federal rights.")

### ii.    Movant, as an unrepresented party, has a duty to inform the Court of any changes in address.

Pursuant to Local Rule 11, "Each attorney and pro se litigant has a continuing obligation to apprise the Court of any address change." M.D. La. LR 11(a)(5). Movant cannot rely on not knowing of his obligation as a pro se litigant to update the Court on his address. *See Lawrence*, 2022 WL 22740833, at *1 (a pro se litigant assumes responsibility for ignorance of procedural and substantive laws); *Berry v. LoanCity*, No. CV 18-888-JWD-RLB, 2019 WL 4455998, at *3 (M.D. La. Aug. 30, 2019), *report and recommendation adopted*, No. CV 18-888-JWD-RLB, 2019 WL 4451210 (M.D. La. Sept. 17, 2019) (same). When Ms. Craft withdrew as Movant's counsel of record, Movant became a pro se litigant, and the Court began mailing notice to the Kincaid Address in accordance with Fed. R. Civ. P. 5. Movant alleges his address changed in September 2005, but he did not inform the Court of his change of address. The Court continued mailing notice to the Kincaid Address, and the Court had no reasonable grounds to believe these mailed notices were not being received by Movant.

Movant alleges he never received any of notices sent to the Kincaid Address (R. Doc. 138-1 at 6), but Ms. Craft withdrew as his counsel of record on June 15, 2004. Movant fails to reasonably explain not receiving the order informing Movant of Ms. Craft's withdrawal or any subsequent notices mailed prior to September 2005. (R. Doc. 69). Further, on August 31, 2005, when Movant still resided at the Kincaid Address, the Court informed Movant of the original

14

trial date. (R. Doc. 95). By failing to update the Court of his change of address in September 2005, Movant is personally responsible for failing to receive the notice of the updated trial date. The Court is not at fault for continuing to mail notice to Movant's last known address, the Kincaid Address.

### iii.    A mailed notice returning as "Undeliverable" does not automatically create a heightened burden on the Court to ensure the party has actual notice.

Movant argues that since a notice sent by the Court in January 2005 was returned as "undeliverable," the Court thereafter had a higher burden to ensure Movant was receiving notice of the filings. (R. Doc. 138-1 at 5). Movant cites to *Jones v. Flowers* for the contention that mailed notice returning as undeliverable creates a higher burden on the Court to ensure actual notice. 547 U.S. 220, 225 (2006). However, *Jones* can be distinguished from the instant matter.

*Jones* held: "When mailed notice of a **tax sale** is returned unclaimed, a State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 220 (emphasis added). *Jones* is limited to proper notice of a tax sale; it does not create a blanket rule that the Court must always take additional steps to provide notice when notice by mail is returned as undeliverable. *See id*. at 223 ("We granted certiorari to determine whether, when notice of a tax sale is mailed to the owner and returned undelivered, the government must take additional reasonable steps to provide notice before taking the owner's property.") The *Jones* court is evaluating the adequacy of notice prior to the State extinguishing a property owner's interest in a home, which is "important and irreversible." *Id*. at 230. In contrast, the notice to Movant returned as undelivered in the instant action was for an order granting a motion to extend the deadline to amend pleadings. (R. Doc. 82).

Further, *Jones* is based on the Supreme Court's previous decision in *Mullane*, in which the court stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. "The means a State employs to provide notice 'must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Jones*, 547 U.S. at 221 (citing *Mullane*, 339 U.S. at 315). *Jones* requires the State take additional reasonable steps to provide notice, such as resending the notice, when the State had **knowledge** that the notice did not reach the intended party. *Jones*, 547 U.S. at 234.

Using the rationale of *Mullane*, the notices were reasonably calculated to reach Movant. Movant alleges that the January 2005 notice returning as undeliverable should have reasonably led the Court to conclude the previous notices were not received by Movant. (R. Doc. 138 at 8). This is nonsensical. Other than the January 2005 notice, the Court sent at least 30 notices to Movant at the Kincaid Address that were not returned as undeliverable.[7] When numerous notices are sent to a party, a singular notice (which does not provide the pertinent trial date) returning as undeliverable is insufficient to show that all notices were not expected to reach the intended party. Under the circumstances, the Court, unlike in *Jones*, had no reason to believe Movant was not receiving the notices mailed to the Kincaid Address. The notice returned as undeliverable was an outlier in the numerous notices mailed to Movant at the Kincaid Address and did not create a heighted responsibility for the Court to ensure Movant received actual notice.

---

[7] *See e.g.,* R. Doc. 68; R. Doc. 69; R. Doc. 70; R. Doc. 72; R. Doc.73; R. Doc. 74; R. Doc. 76; R. Doc. 78; R. Doc. 79; R. Doc. 80; R. Doc. 84; R. Doc. 86; R. Doc. 87; R. Doc. 93; R. Doc. 95; R. Doc. 96; R. Doc. 97; R. Doc. 105; R. Doc. 109; R. Doc. 110; R. Doc. 120; R. Doc. 122; R. Doc. 123; R. Doc. 126; R. Doc. 127; R. Doc. 130; R. Doc. 131; R. Doc. 132; R. Doc. 133; R. Doc. 135.

### D.        Property Interest

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding the FBI's notice, sent by certified mail to a prison with procedures for delivering mail to the inmate, was calculated under all the circumstances to apprise the inmate of the pendency of the action and afford him an opportunity to present objections). Due process does not require that a property owner receive actual notice before the government may take his property. *Id*. at 170. Rather, due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbery*, 534 U.S. at 167; *Mullane*, 339 U.S. at 314; *Jones*, 547 U.S. at 226.

Movant argues that because his cause of action is a vested property right, the dismissal of his action with prejudice constitutes a deprivation of property for purposes of due process. (R. Doc. 138-1 at 9). When pursuing a claim under Fed. R. Civ. P. 60(b)(4), a judgment is void if the court acted "in a manner inconsistent with due process of law." *Carter*, 136 F.3d at 1006. If the Court deprived Movant of property without due process, it necessarily would have acted in a manner inconsistent with due process of law, and the judgment would be void. Movant's argument is therefore repetitive of arguments previously addressed.

17

## III.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Floyd Williams' Motion to Vacate Judgment Pursuant to Rule 60(b)(4) (R. Doc. 138) and Plaintiff's Motion for Evidentiary Hearing (R. Doc. 139) be **DENIED**.

Signed in Baton Rouge, Louisiana, on August 4, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**